# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SUNNY HANDICRAFT (H.K.) LTD., | ) | |
| a Hong Kong corporation, and | ) | |
| BIN TEH HANDICRAFT (SHENZHEN) | ) | |
| CO. LTD., a China corporation, | ) | |
| | ) | |
| Plaintiffs, | ) | 16 C 4025 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| BETH ANN EDWARDS and | ) | |
| ROBERT J. HETZLER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sunny Handicraft (H.K.) Ltd. ("Sunny") and Bin Teh Handicraft (Shenzhen) Co. Ltd. ("Bin Teh") have sued Defendants Beth Ann Edwards ("Edwards") and Robert J. Hetzler ("Hetzler"), alleging claims for fraud, breach of fiduciary duty, and defamation. Defendants have moved to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). In the alternative, they have moved to dismiss Plaintiffs' defamation claims for failure to state a claim to relief pursuant to Rule 12(b)(6). For the reasons stated herein, Defendants' motion to dismiss [6] is granted in part and denied in part.

## Background

Plaintiff Bin Teh is a Chinese corporation that manufactures Christmas decorations. Compl. ¶ 3, ECF No. 1. Plaintiff Sunny is a Hong Kong corporation that processes orders from retailers for the purchase of decorations manufactured

by Bin Teh. *Id.* ¶¶ 2–3. From 2006 to 2013, Plaintiffs worked with a Florida-based company called Envision This! LLC ("Envision"). *Id.* ¶¶ 1, 8. Envision served as Plaintiffs' sales representative, assisting Plaintiffs in managing their business relationships with various retailers. *Id.* ¶ 8. Envision's sole members are Defendants Edwards and Hetzler, both of whom are Florida residents. *Id.* ¶ 4.

Beginning in 2007, Walgreen Co. ("Walgreens"), an Illinois corporation with its principal place of business in Deerfield, Illinois, regularly purchased merchandise from Plaintiffs. *Id.* ¶¶ 7, 10–11. From 2007 to 2012, Plaintiffs sold and shipped merchandise to Walgreens on at least eleven occasions. *Id.* ¶ 11. Envision served as Plaintiffs' sales representative with respect to these shipments. *Id.* ¶ 12. For each shipment, Walgreens paid for Plaintiffs' merchandise by issuing letters of credit listing Sunny as the sole beneficiary. *Id.* ¶¶ 13, 15.

According to Plaintiffs, one of Envision's responsibilities as Plaintiffs' sales representative was to ensure that Walgreens paid Plaintiffs by issuing letters of credit. *Id.* ¶ 40. To that end, in coordinating sales of Plaintiffs' goods, Envision was responsible for forwarding "Import Buying Confirmation Forms" from Plaintiffs to Walgreens. *Id.* ¶ 41. The Confirmation Forms included information that designated Sunny as the entity to be named as the beneficiary for the letters of credit backing each transaction. *Id.* ¶¶ 41–42.

In 2013, as in past years, Walgreens placed orders for the purchase of Plaintiffs' merchandise in anticipation of the holiday season. *Id.* ¶ 16. Walgreens ordered about $3.5 million in merchandise. *Id.* Plaintiffs' general manager, Daniel

Huang, sent Confirmation Forms for these orders to Edwards and Hetzler, with the understanding that Edwards and Hetzler would then forward the forms to Walgreens and that Walgreens would pay Plaintiffs accordingly. *Id.* ¶ 42. In the meantime, Plaintiffs began manufacturing the ordered merchandise and preparing its shipment to Walgreens. *Id.* ¶ 20.

According to Plaintiffs, however, Edwards and Hetzler did not forward the Confirmation Forms to Walgreens as instructed. *Id.* ¶ 43. Instead, after they received the forms from Huang, Edwards and Hetzler altered them so as to designate Envision—not Sunny—as the beneficiary of Walgreens's letters of credit. *Id.* Plaintiffs allege that these alterations were made without Plaintiffs' approval or knowledge. *Id.* After making the alterations, Hetzler e-mailed the Confirmation Forms to Walgreens representatives in Illinois, flagging in the body of his e-mail that Walgreens should "note the change of beneficiary." *Id.* ¶ 44.

From May to August 2013, Huang repeatedly asked Edwards and Hetzler when letters of credit would issue from Walgreens, explaining that Plaintiffs needed the letters of credit in order to obtain a loan to finance the manufacture of the merchandise Walgreens had ordered. *Id.* ¶¶ 47–48. In response, Edwards and Hetzler represented to Huang that a letter of credit naming Sunny as the beneficiary was forthcoming. *Id.* ¶ 49. According to Plaintiffs, however, these representations were false, and Edwards and Hetzler knew all along that no such letters of credit would be issued. *Id.*

On July 18, 2013, Walgreens issued an irrevocable, transferable letter of credit naming Envision as the sole beneficiary. *Id.* ¶ 22. Several days later, Walgreens employee Karl Waldschmidt, while in Illinois, e-mailed Hetzler to inform him that this letter of credit had been issued. *Id.* ¶ 52. On August 1, 2013, Walgreens issued a second letter of credit, again naming Envision as the sole beneficiary. *Id.* ¶ 23. Around this time, Hetzler instructed Huang not to discuss the letters of credit with any of Walgreens's representatives. *Id.* ¶ 53. Plaintiffs allege that Hetzler gave Huang this instruction in order to conceal the fact that Edwards and Hetzler had surreptitiously altered the Confirmation Forms to name Envision as the beneficiary for the letters of credit. *Id.*

On August 8, 2013, Hetzler informed Plaintiffs for the first time that Walgreens had issued letters of credit naming Envision, rather than Sunny, as the beneficiary. *Id.* ¶ 24. Plaintiffs asked Edwards and Hetzler to transfer these letters of credit to Sunny, but they refused to do so, falsely telling Plaintiffs that the letters of credit were nontransferable. *Id.* ¶¶ 25, 59–60.

Without a letter of credit to guarantee payment, Plaintiffs had difficulty financing the manufacturing and shipment of the merchandise that Walgreens had ordered. *Id.* ¶ 27. Edwards and Hetzler promised to assist Plaintiffs in arranging financing by obtaining a $1.5 million letter of credit for Plaintiffs, but they never delivered on this promise. *Id.* ¶ 28. According to Plaintiffs, Edwards and Hetzler promised to provide this letter of credit in order to induce Plaintiffs to continue manufacturing and shipping the merchandise for Walgreens. *Id.* ¶¶ 61–62.

On September 16, 2013, Walgreens issued a third and final letter of credit listing Envision as the beneficiary. *Id.* ¶ 29. According to Plaintiffs, Envision pocketed approximately $3 million by drawing down on the three letters of credit, and neither Envision nor Walgreens has ever paid Plaintiffs anything for manufacturing and shipping the merchandise that Walgreens ordered for the 2013 holiday season. *Id.* ¶¶ 34, 36, 39.

On October 11, 2013, Edwards sent an e-mail to various Walgreens employees. *See id.* ¶ 79; *id.*, Ex. F. At least one of these employees was located in Illinois.[1] *Id.* ¶ 75; *id.*, Ex. F. Edwards's e-mail was a response to an inquiry from Walgreens employee Teresa Chu about the status of certain shipments of merchandise from Plaintiffs. *See id.*, Ex. F. In responding to Chu's inquiry, Edwards wrote:

> [T]he bookings were done by the factory. They changed our passwords [on the freight forwarding system] and . . . we are blind with the facts, hence the reason we were working on trying to gather the information collectively to help put a stop to the nonsense. . . . Again, all our facts were all documents were submitted. So there is a litany of misrepresentations by Sunny Handicraft. Such to the fact that legal action has transpired.

*Id.* at 2.

Two days later, on October 13, 2013, Edwards sent a separate e-mail to Hadieh Hasan, a Walgreens employee also located in Illinois. *Id.* ¶ 75. In this e-mail, Edwards wrote:

---

[1]    Although Defendants assert in their opening brief that this e-mail was not sent to any employees located in Illinois, *see* Defs.' Mem. Supp. at 8, ECF No. 8, they concede in their reply brief that this e-mail was indeed sent to Illinois. Reply at 4–5, ECF No. 15.

> As for Daniel [Huang] at this point this is just pure Chinese thievery, gangsters. We have written confirmation all docs were submitted. It is one continual lie upon lie on their end. Their actions are completely unethical and our lawyers are handling.

*Id.*, Ex. E. Plaintiffs allege that Edwards's e-mails contain false statements that harmed their reputations, and that Edwards knew of or recklessly disregarded the statements' falsity. *Id.* ¶¶ 78, 80–81.

On March 4, 2014, Plaintiffs filed a lawsuit against Envision and Walgreens before this Court. *See Sunny Handicraft (H.K.) Ltd. v. Envision This! LLC*, No. 14-cv-1512 (N.D. Ill. filed Mar. 4, 2014). In that lawsuit, Plaintiffs have brought claims for breach of contract, unjust enrichment, fraud, breach of fiduciary duty, and defamation.[2] *See generally* 3d Am. Compl., No. 14-cv-1512, ECF No. 124. On April 5, 2016, Plaintiffs filed the present lawsuit against Edwards and Hetzler, alleging claims for fraud, breach of fiduciary duty, and defamation. Edwards and Hetzler now move to dismiss Plaintiffs' complaint.

## Analysis

### I. Motion to Dismiss for Lack of Personal Jurisdiction

First, Defendants have moved to dismiss Plaintiffs' complaint for lack of personal jurisdiction under Rule 12(b)(2). When a defendant challenges personal jurisdiction under Rule 12(b)(2), the Court first must decide whether there is a dispute over any material facts. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). If such a dispute exists, the Court must hold a hearing at which the

---

[2] As of the time of this writing, Plaintiffs' suit against Envision and Walgreens remains pending and has reached the summary judgment stage.

plaintiff must establish personal jurisdiction by a preponderance of the evidence. *See id.*; *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, there are no disputes of material fact, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Hyatt*, 302 F.3d at 713. In determining whether a plaintiff has established a *prima facie* case of personal jurisdiction, the Court must "accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012); *accord Purdue*, 338 F.3d at 782.

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). Illinois law permits courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *See* 735 Ill. Comp. Stat. 5/2-209(c); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). As such, "[t]he key question" in reviewing Defendants' motion to dismiss for lack of personal jurisdiction is whether Defendants "have sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 700–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Stated differently, each defendant must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Id.* at 701 (quoting

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  In conducting the "minimum contacts" analysis, the Court must focus on "contacts that the defendant *himself* creates with the forum State," not the contacts between the forum and the plaintiff.  *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (internal quotation marks omitted).

The extent to which the Court may exercise personal jurisdiction over a defendant depends upon the nature of the defendant's contacts with the forum state.  *See Tamburo*, 601 F.3d at 701.  If the defendant's contacts with the forum state are "continuous and systematic," then the defendant is subject to general personal jurisdiction, meaning that he can be sued in the forum state for any cause of action.  *Id.*; *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). By contrast, "[m]ore limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state."  *uBID*, 623 F.3d at 425.

In responding to Defendants' motion to dismiss, Plaintiffs do not argue that Defendants are subject to general personal jurisdiction in Illinois.  Instead, they contend solely that Defendants are subject to specific personal jurisdiction.  The Court may exercise specific personal jurisdiction over a defendant when (1) the defendant "purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state," (2) "the alleged injury . . . arise[s] from the defendant's forum-related activities," and (3) "the

exercise of jurisdiction [ ] comport[s] with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673; *accord Tamburo*, 601 F.3d at 702.

The first inquiry of this three-part test "depends in large part on the type of claim at issue." *Felland*, 682 F.3d at 674. In particular, when the plaintiff brings a tort action, this inquiry focuses on whether the defendant "purposefully directed" his activities at the forum state. *Id.* To demonstrate that the defendant purposefully directed conduct at the forum state, the plaintiff must show "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 674–75 (quoting *Tamburo*, 601 F.3d at 703) (internal quotation marks omitted).

Finally, in determining whether it may exercise specific personal jurisdiction over a defendant, the Court must consider the scope of personal jurisdiction with respect to each of the claims alleged in the plaintiff's complaint. *See, e.g.*, *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 164 F. Supp. 3d 1040, 1047–49 (N.D. Ill. 2016); *see also Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 708–13 (N.D. Ill. 2014). This is because "[p]ermitting the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific jurisdiction over a different claim that does not arise out of or relate to the defendant's forum contacts would violate the Due Process Clause." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006); *accord Remick v. Manfredy*, 238 F.3d 248,

255 (3d Cir. 2001); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999); *see also* Charles Alan Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Civ. § 1351 (3d ed. 2004) ("There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim."). As such, the Court turns to assess whether it has specific personal jurisdiction over Defendants with respect to each of Plaintiffs' claims.

### A.     Counts I and II: Fraud and Breach of Fiduciary Duty

In Count I, Plaintiffs bring a claim for fraud against both Edwards and Hetzler. As the basis for this claim, Plaintiffs assert that Edwards and Hetzler engaged in a fraudulent scheme to divert over $3 million to Envision by altering the Confirmation Forms to designate Envision as the beneficiary for Walgreens's letters of credit. In addition, Plaintiffs allege that Edwards and Hetzler made numerous misrepresentations to Plaintiffs to intentionally conceal this scheme, and that they falsely promised to provide Plaintiffs with a $1.5 million letter of credit in order to induce Plaintiffs to ship merchandise to Walgreens. In Count II, Plaintiffs bring a claim for breach of fiduciary duty against Edwards and Hetzler based upon the same facts underlying Count I.

Because claims for fraud and breach of fiduciary duty sound in tort, the key question in conducting the specific personal jurisdiction analysis as to these claims is whether "the conduct underlying the claims was purposely directed at the forum state." *Tamburo*, 601 F.3d at 702; *accord Felland*, 682 F.3d at 674. As noted above,

conduct is "purposely directed" at the forum state if Defendants engaged in intentional conduct expressly aimed at Illinois with the knowledge that Plaintiffs would be injured in Illinois as a result. *Felland*, 682 F.3d at 674–75.

In arguing that Defendants' conduct meets the purposeful-direction requirement, Plaintiffs make much of the fact that Defendants "made hundreds of contacts—via e-mail, phone, and in person—with Walgreens in Illinois" in effecting their scheme to divert Walgreens's payment for Plaintiffs' merchandise to Envision. Pls.' Resp. at 8, ECF No. 14. In particular, Plaintiffs point to the fact that Defendants e-mailed the altered Confirmation Forms to Walgreens, which is located in Illinois, *see* Compl. ¶¶ 7, 44, as well as to the fact that Defendants had numerous communications with Walgreens representatives in Illinois to discuss Walgreens's forthcoming letters of credit.[3] In response, Defendants emphasize that the crux of Plaintiffs' claims concern misrepresentations that were made from Florida (where Defendants reside) to China and Hong Kong (where Plaintiffs reside), not from or to Illinois. Defs.' Mem. Supp. at 7–8.

This aspect of the parties' dispute highlights an issue that the Seventh Circuit has yet to resolve: whether a plaintiff seeking to satisfy the first prong of the purposeful-direction requirement may do so merely by showing intentional conduct aimed at the forum state, or whether the plaintiff must instead point to intentional

---

[3] As evidence of these communications, Plaintiffs have attached exhibits containing affidavits and deposition testimony to their brief in opposition to Defendants' motion to dismiss. The Court may consider these exhibits in determining whether to dismiss Plaintiffs' claims for lack of personal jurisdiction. *See Purdue*, 338 F.3d at 782; *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 741 (N.D. Ill. 2011).

*and* allegedly tortious conduct aimed at the forum state. *See Felland*, 682 F.3d at 675 n.2 (noting the circuit split on this question and declining to take a side).

Here, Plaintiffs have clearly demonstrated that Defendants aimed some intentional conduct at Illinois. For example, after altering the Confirmation Forms, Defendants e-mailed the forms to Walgreens representatives in Illinois. *Id.* ¶ 44. They also maintained frequent contact with Walgreens representatives in Illinois throughout the summer and fall of 2013. *See* Pls.' Resp. at 3–4. But Plaintiffs have not shown that Defendants aimed conduct at Illinois that was both intentional *and* allegedly tortious. The central tortious acts giving rise to Plaintiffs' fraud claim are Defendants' misrepresentations to Plaintiffs regarding the letters of credit. *See Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000) (holding that a plaintiff seeking to prevail on a fraud claim under Illinois law must prove that defendant made a false statement of material fact with intent to induce plaintiff's action).[4] As Defendants point out (and Plaintiffs do not dispute), "[n]owhere in the Complaint [do] Plaintiffs allege that [ ] Defendants made such misrepresentations to, from, or in Illinois." Defs.' Mem. Supp. at 7. These misrepresentations are also key to Plaintiffs' breach of fiduciary duty claim, as is Defendants' alteration of the

---

[4]     Although Defendants do not explicitly take the position that Florida law rather than Illinois law governs Plaintiffs' fraud claim, they imply as much by citing Florida law in the course of discussing the elements of fraud in their reply brief. *See* Reply at 4. With respect to the elements of fraud, however, Illinois law and Florida law do not conflict. *Compare Houben*, 231 F.3d at 1074, *with Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984). As such, the Court considers Illinois law with regard to this issue. *See Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994) ("Where there is no disagreement among the contact states, the law of the forum state applies.").

Confirmation Forms—another act that Plaintiffs do not allege took place in Illinois. *See* Compl. ¶ 43.

In any event, however, the Court need not resolve the question whether Defendants' intentional, nontortious conduct directed at Illinois satisfies the first prong of the purposeful-direction requirement. This is because Plaintiffs have failed to satisfy the third prong of this requirement, as they have not established Defendants' "knowledge that . . . [Plaintiffs] would be injured [ ] in the forum state." *Felland*, 682 F.3d at 675. Plaintiffs' alleged injury stems from the costs they incurred in manufacturing and shipping goods for which they never received payment as a result of Defendants' misrepresentations and breach of fiduciary duty. *See* Compl. ¶¶ 65, 69–71. These injuries were felt in Hong Kong and China, where Sunny and Bin Teh respectively reside. *See Felland*, 682 F.3d at 675 (holding in intentional misrepresentation action that plaintiffs' injury was felt in Wisconsin when defendant directed some of its misrepresentations to plaintiffs' Wisconsin residence). Nowhere in Plaintiffs' filings do they claim that they felt these injuries in Illinois, much less that Defendants had knowledge that Plaintiffs would be injured in Illinois as a result of Defendants' conduct.

Because they have not established Defendants' knowledge that Plaintiffs would be injured in Illinois, Plaintiffs have not satisfied the purposeful-direction requirement under the three-part test for specific personal jurisdiction. *See Tamburo*, 601 F.3d at 702. As such, they cannot make a *prima facie* showing of personal jurisdiction over Defendants with respect to their claims for fraud and

breach of fiduciary duty. Counts I and II are accordingly dismissed under Rule 12(b)(2).[5]

## B.     Counts III and IV: Defamation

In Counts III and IV, Plaintiffs bring claims for defamation *per se* and defamation *per quod* against Edwards. These claims are based upon the statements Edwards made in her e-mails to Walgreens employees on October 11 and October 13, 2013. According to Plaintiffs, Edwards is subject to specific personal jurisdiction with respect to these claims because, by sending these e-mails to Walgreens employees located in Illinois, she purposefully directed her defamatory conduct at Illinois. For the reasons explained below, the Court agrees with Plaintiffs and finds that it may exercise personal jurisdiction over Edwards with respect to Plaintiffs' defamation claims.

### 1.     "Purposefully Directed" Conduct and Injury "Arising from" Forum-Related Contacts

As noted above, Plaintiffs bear the burden of establishing personal jurisdiction by showing that Edwards "purposefully directed [her] activities" at Illinois and that their "alleged injury . . . arise[s] from" Edwards's Illinois-related activities. *Felland*, 682 F.3d at 673. To show that Edwards "purposefully directed"

---

[5]     In a one-sentence footnote in their response brief, Plaintiffs request leave to conduct discovery on the issue of personal jurisdiction in the event that the Court "consider[s] granting" Defendants' motion. Pls.' Resp. at 14 n.6. The Court declines to construe this footnote as a motion, and the Court therefore need not address this request. Even if Plaintiffs had properly moved for leave to conduct discovery, however, Plaintiffs would not be entitled to take discovery on this issue because, for the reasons discussed *supra*, they have not made a *prima facie* showing of personal jurisdiction. *See Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000) ("At a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted.").

her activities at Illinois, Plaintiffs must show that Edwards engaged in (1) intentional (or intentional and allegedly tortious) conduct (2) expressly aimed at Illinois (3) with the knowledge that Plaintiffs would be injured in Illinois. *Id.* at 674–75.

Plaintiffs have successfully made a *prima facie* showing of these requirements. First, by sending the allegedly defamatory e-mails, Edwards engaged in intentional and allegedly tortious conduct. Moreover, because these e-mails were sent to Walgreens representatives in Illinois for the alleged purpose of harming Plaintiffs' reputation, *see* Compl. ¶¶ 75–84, the e-mails were "expressly aimed" at Illinois. *See Tamburo*, 601 F.3d at 707 ("Tortious acts aimed at a target in the forum state and undertaken for the express purpose of causing injury there are sufficient to satisfy [the] express-aiming requirement."). This conduct harmed Plaintiffs in Illinois, even though Plaintiffs are not Illinois residents, because a defamation injury occurs in any state where the allegedly defamatory statement was published. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) ("The tort of libel is generally held to occur wherever the offending material is circulated."); *Faigin v. Doubleday Dell Pub. Grp., Inc.*, 98 F.3d 268, 270 (7th Cir. 1996). Further, Plaintiffs allege that Edwards intended the effects of these e-mails to be felt in Illinois. *See* Compl. ¶¶ 80–84. As such, Plaintiffs have made a *prima facie* showing that Edwards "purposefully directed" her allegedly defamatory conduct at Illinois. *See Felland*, 682 F.3d at 674–76; *Tamburo*, 601 F.3d at 703–08. Plaintiffs have also established that their defamation claims "arise from" Edwards's

contacts with Illinois, because Edwards's e-mails to Walgreens employees in Illinois are "central to the [defamatory] course of contact alleged in the complaint." *Felland*, 682 F.3d at 677.

In seeking to dismiss Plaintiffs' defamation claims, Defendants do not dispute that the claims arise from the e-mails that Edwards purposefully directed toward Illinois. Rather, they assert that the sending of two e-mails is insufficient as a matter of law to establish minimum contacts giving rise to specific personal jurisdiction. In support, they cite *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014). But Defendants' reliance on *Advanced Tactical* is unpersuasive. In that case, the Seventh Circuit considered whether "the sending of two allegedly misleading emails to a list of subscribers that included Indiana residents" was sufficient to give rise to specific personal jurisdiction in a trademark infringement action brought in Indiana. *Id.* at 802. The court answered this question in the negative, finding that it was entirely "fortuitous" whether individuals who had signed up to be e-mail subscribers happened to be located in Indiana. *Id.* at 803. The court noted, however, that the outcome of the case might have been different if the defendant's contacts with Indiana were based on "deliberate actions by the defendant to target or direct itself toward the forum state." *Id.*

The facts of the present case illustrate the precise counterfactual that the Seventh Circuit considered in *Advanced Tactical*. It is not merely fortuitous that the recipients of Edwards's e-mails were located in Illinois; rather, Edwards

directed her e-mails deliberately and specifically at Illinois by sending personal messages to her Illinois-based business contacts at Walgreens. These personal e-mails are thus distinguishable from the generic subscriber e-mails at issue in *Advanced Tactical*. For these reasons, the Court finds that Edwards could "reasonably anticipate being haled into court" in Illinois in connection with the October 11 and October 13 e-mails. *Tamburo*, 601 F.3d at 701 (internal quotation marks omitted).

### 2.    Traditional Notions of Fair Play and Substantial Justice

In addition, the Court concludes that the exercise of specific personal jurisdiction over Edwards with regard to Plaintiffs' defamation claims "does not offend traditional notions of fair play and substantial justice." *Id.* at 700–01 (quoting *Int'l Shoe*, 326 U.S. at 316). In considering whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice, courts consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 709 (quoting *Burger King*, 471 U.S. at 477). Once the plaintiff has established that the defendant purposefully directed its conduct at the forum state, the defendant may avoid jurisdiction only if it "present[s] a compelling case that the presence of some other

considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

In arguing that the relevant factors weigh against a finding of personal jurisdiction, Defendants assert that litigating in Illinois as out-of-state defendants would be burdensome to them and that Illinois has no interest in adjudicating a dispute between nonresidents. Reply at 5. In response, Plaintiffs claim that litigating this case in Illinois furthers their interest in obtaining convenient relief, as well as the interstate interest in efficient resolution of controversies, given that Plaintiffs' earlier-filed lawsuit against Envision is already pending before this Court. Resp. at 11–12. Having considered these arguments, the Court agrees with Plaintiffs that the interstate interest in efficient resolution of controversies weighs in favor of a finding of personal jurisdiction in this case. Plaintiffs' interest in obtaining convenient relief and the burden on Defendants are factors that weigh equally for and against personal jurisdiction, and the remaining factors are neutral. Thus, on balance, the relevant factors weigh in favor of a finding of personal jurisdiction, and Defendants have not met their burden of "present[ing] a compelling case" otherwise. *Burger King*, 471 U.S. at 477. The Court therefore concludes that the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice, and Defendants' motion to dismiss Counts III and IV for lack of personal jurisdiction is denied.

## II. Motion to Dismiss Defamation Claims for Failure to State a Claim

In the alternative to their motion to dismiss for lack of personal jurisdiction, Defendants have moved to dismiss Plaintiffs' defamation claims for failure to state

a claim to relief under Rule 12(b)(6).  A motion under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint.  *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint "need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).  In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint and must draw reasonable inferences in the plaintiff's favor.  *See Tamayo*, 526 F.3d at 1081.

In moving to dismiss Plaintiffs' defamation claims under Rule 12(b)(6), Defendants contend that Edwards's statements in her October 11 and October 13 e-mails are unactionable as a matter of law.  First, as for the October 11 e-mail, they argue that Edwards's statement that Plaintiffs "changed [Envision's] passwords" is unactionable because it is subject to an innocent construction.  They also argue that Edwards's statements about Plaintiffs' "litany of misrepresentations" and "continual lie[s] upon lie[s]" are unactionable because they constitute unverifiable opinions.  Finally, Defendants maintain that the "Chinese thievery" statement in the October 13 e-mail is unactionable because it does not refer to Plaintiffs and because it constitutes mere rhetorical opinion.

The Court can dispose of these arguments quickly, because it has already addressed them in Plaintiffs' previously filed lawsuit against Envision. In that lawsuit, Plaintiffs have brought defamation claims based on the same October 11 and October 13 e-mails at issue in the present case. And in moving to dismiss those claims, Envision advanced arguments that are identical to the ones that Defendants have raised here. The Court was unpersuaded by those arguments and denied Envision's motion to dismiss. *See* Order of 5/12/16 at 3–4, No. 14-cv-1512, ECF No. 139.

For the same reasons that the Court rejected Envision's arguments in Plaintiffs' earlier-filed case, the Court rejects Defendants' arguments here. First, given that Edwards ended her October 11 e-mail "by saying that Sunny's actions have been so wrongful that 'legal action has transpired,' the Court is unpersuaded that it would be reasonable to construe the 'password' statement innocently." *Id.* at 4 (citing *Bryson v. News Am. Publ'ns, Inc.*, 672 N.E.2d 1207, 1215 (Ill. 1996)). Second, neither the "litany of misrepresentations" statement nor the "continual lie upon lie" statement constitutes unverifiable opinion, because whether Plaintiffs told particular falsehoods about the status of their shipping process—as Edwards's e-mails accused them of doing—is indeed verifiable. *Id.* Finally, the "Chinese thievery" statement undoubtedly referred to Plaintiffs, given that the statement made explicit reference to Daniel Huang, Plaintiffs' general manager. *Id.* at 3 (citing *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 925–26 (7th Cir. 2003)). And although this statement employed some hyperbole, the statement is

actionable because its context within the October 13 e-mail demonstrates that Edwards intended the statement to communicate an assertion of fact. *Id.* at 3–4.

In sum, Defendants' arguments in support of their motion to dismiss Plaintiffs' defamation claims in the present case fare no better than the identical arguments that Envision offered—and the Court already rejected—in support of Envision's motion to dismiss the defamation claims in Plaintiffs' related lawsuit. Defendants' motion to dismiss Counts III and IV for failure to state a claim is thus denied.

## Conclusion

For the reasons stated herein, Defendants' motion to dismiss [6] is granted in part and denied in part. Counts I and II are dismissed for lack of personal jurisdiction under Rule 12(b)(2). Because Counts I and II are the only counts brought against Defendant Hetzler, Hetzler is hereby terminated as a defendant in this case. In all other respects, the motion is denied.

**IT IS SO ORDERED.**          **ENTERED    3/20/17**

_____
**John Z. Lee
United States District Judge**